**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **BRIAN PARKER, MICHAEL FRANK,** | § | |
| **MARK DAILEY, and JEREMY COZART,** | § | |
| **on behalf of themselves and all** | § | |
| **others similarly situated,** | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | **Civil Action No. 3:10-CV-1332-P** |
| **v.** | § | |
| | § | |
| **ABC DEBT RELIEF, LTD. CO., THE** | § | |
| **DEBT ANSWER, LLC, LLOYD WARD,** | § | |
| **P.C. D/B/A LLOYD WARD &** | § | |
| **ASSOCIATES, LLOYD REGNER,** | § | |
| **and LLOYD WARD,** | § | |
| | § | |
| *Defendants*. | § | |

---

**BRIEF IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Dated:  December 2, 2011

**Charles W. Branham, III**
Texas Bar No. 24012323
tbranham@goldfarbbranham.com
**Jeffrey Goldfarb**
Texas Bar No. 00793820
jgoldfarb@goldfarbbranham.com
**Todd B. Goldberg**
Texas Bar No. 24072121
tgoldberg@goldfarbbranham.com

**GOLDFARB BRANHAM LLP**
Saint Ann Court
2501 N. Harwood Street, Suite 1801
Dallas, Texas 75201
214.583.2233 (Telephone)
214.583.2234 (Facsimile)

*Attorneys for Plaintiffs*

# Table of Contents

**Preliminary Statement**.................................................................................................... 1

**Statement of Material Facts** .......................................................................................... 3

   **1.** **All of the Defendants jointly employed the Plaintiffs.**....................................... 3

   **2.** **The debt consultants were the Defendants' inside salesmen paid by comission.** ....... 6

   **3.** **The account specialists provided the services that the Defendants sold to clients.**..... 7

   **4.** **The Plaintiffs were not properly compensated for all overtime hours worked.** .........9

**Summary Judgment Standard**....................................................................................... 10

**Argument & Authorities** ............................................................................................... 12

   **1.** **The Defendants are employers and joint employers.** ...................................... 13

   **2.** **The Defendants failed to adequately compensate Plaintiffs for all overtime hours worked despite knowledge that Plaintiffs worked overtime.**...................................... 18

      A.  The Plaintiffs consistently worked more than 40 hours in a given workweek. .......... 18

      B.  The Defendants did not compensate Plaintiffs for all overtime hours worked........... 19

      C.  The Defendants knew (or could have known) that Plaintiffs worked overtime. ........ 20

      D.  The three-year statute of limitations applies because Defendants willfully violated the FLSA. ................................................................................................. 22

   **3.** **The Plaintiffs are non-exempt employees under the FLSA.** ...................................... 23

      A.  The "administrative exemption" does not apply.............................................. 24

         i.  *The administrative exemption does not apply to debt consultants.* .................... 25

         ii.  *The administrative exemption does not apply to account specialists.* .................. 27

      B.  The "outside sales" exemption does not apply. .......................................... 29

      C.  The other Section 213 exemptions do not apply.......................................... 30

   **4.** **The Defendants cannot establish any other affirmative defense or claim for affirmative relief as a matter of law.** ......................................................... 31

      A.  The Defendants' affirmative defense that the Plaintiffs were purportedly compensated for all overtime hours worked fails as a matter of law. ............................... 32

      B.  ABC is not entitled to any offsets. ............................................................ 32

      C.  The Defendants' claim that Plaintiffs worked "irregular" hours and that time was "administratively difficult to record" is no defense............................................ 33

      D.  The Defendants' affirmative defense alleging that the Plaintiffs are not similarly situated fails as a matter of law..................................................................... 33

      E.  The Defendants cannot establish good faith or that the Plaintiffs are not entitled to liquidated damages..................................................................................... 34

      F.  The Defendants cannot recover on any claims for affirmative relief or for costs and attorney's fees. ......................................................................................... 36

**Conclusion & Prayer for Relief** ............................................................................... 36

## Table of Authorities

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................................................ 11

*Anderson v. Mt. Clemens Pottery Co.,*
328 U.S. 680 (1946), *superseded by statute on other grounds as stated in*
*IBP, Inc. v. Alvarez,* 546 U.S. 21 (2005) ........................................ 12, 18, 19, 33

*Arnold v. Ben Kanowsky,*
361 U.S. 388 (1960) ................................................................................................ 24

*Auer v. Robbins,*
519 U.S. 452 (1997) ................................................................................................ 24

*Bratt v. Cty. of Los Angeles,*
912 F.2d 1066 (9th Cir. 1990) .................................................................... 24, 27, 29

*Brennan v. Valley Towing Co., Inc.,*
515 F.2d 100 (9th Cir. 1975) ...................................................................... 31, 32, 35

*Casas v. Conseco Finance Corp.,*
No. Civ. 00-1512, 2002 WL 507059 (D. Minn. Mar. 31, 2002) .............................. passim

*Cash v. Conn Appliances, Inc.,*
2 F.Supp.2d 884 (E.D. Tex. 1997) ........................................................................... 22

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ............................................................................ 11, 12, 31, 32

*Dalheim v. KDFW-TV,*
918 F.2d 1220 (5th Cir. 1990) ................................................................................. 24

*Dole v. Elliott Travel & Tours, Inc.,*
942 F.2d 962 (6th Cir. 1991) ................................................................................... 13

*Donovan v. Grim Hotel Co.,*
747 F.2d 966 (5th Cir. 1984) .................................................................. 13, 15, 16, 17

*Donovan v. Hamm's Drive Inn,*
661 F.2d 316 (5th Cir. 1981) ...................................................................... 31, 32, 35

*Idaho Sheet Metal Works v. Wertz,*
383 U.S. 190 (1966) ................................................................................................ 24

*Johnson v. Big Lots Stores, Inc.,*
Nos. 04-3201, 05-6627, 2007 WL 5200224 (E.D. La. Aug. 21, 2007) ...................... 34

*Kluss, et al. v. Credit Exchange Corp, et al.,*
Case No. SACV 09-00080-CJC(MLGx), Order Granting in Part Plaintiffs'
Motion for Partial Summary Judgment (C.D. Cal. Jan. 27, 2011) (PACER) .............. 2, 25

*Magana v. Commonwealth of the Northern Mariana Islands,*
107 F.3d 1436 (9th Cir. 1997) ................................................................................. 24

*Martin v. Cooper Electric Supply Co.*,
  940 F.2d 896 (3d Cir. 1991) ........................................................... 25, 27, 29

*McLaughlin v. Richland Shoe Co.*,
  486 U.S. 128 (1988) ............................................................................ 18, 23

*Nationwide Mut. Ins. Co. v. Darden*,
  503 U.S. 318 (1992) ..................................................................... 13, 15, 17

*Reich v. Chicago Title Ins. Co.*,
  853 F.Supp. 1325 (D. Kan. 1994) ................................................ 25, 27, 29

*Reich v. Circle C Invs., Inc.*,
  998 F.2d 324 (5th Cir. 1989) ......................................................... 13, 15, 17

*Reich v. Dep't of Conserv. & Nat. Resources, State of Ala.*,
  28 F.3d 1076 (11th Cir. 1994) ................................................ 18, 20, 22, 23

*Reich v. Newspapers of New England*,
  44 F.3d 1060 (1st Cir. 1995) ......................................................................... 24

*Reich v. Stewart*,
  121 F.3d 400 (8th Cir. 1997) ................................................................. passim

*Riel v. Elec. Data Sys. Corp.*,
  99 F.3d 678 (5th Cir. 1996) ........................................................................ 31

*San Antonio Metro. Transit Auth. v. McLaughlin*,
  684 F.Supp. 158 (W.D. Tex. 1988) .............................................................. 36

*Schultz v. All-Fund, Inc.*,
  Civ. No. JFM-06-CV-2016, 2007 WL 2333049 (D. Mar. Aug. 13, 2007) ................ 29, 30

*Singer v. Cty. of Waco, Tex.*,
  324 F.3d 813 (5th Cir. 2003) ................................................................ 33, 34

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944) ...................................................................................... 25

*v. Credit Solutions of Am., Inc.*,
  No. 3:09-CV-1208-M, 2010 WL 2216526 (N.D. Tex. June 1, 2010) (Lynn, J.) .............. 33

*Wirtz v. Lone Star Steel Co.*,
  405 F.2d 668 (5th Cir. 1968) ............................................................... passim

**Statutes**

29 U.S.C. § 203 ................................................................................. 13, 18, 20
29 U.S.C. § 207 ........................................................................... 12, 18, 19, 20
29 U.S.C. § 211 ........................................................................... 32, 33, 35
29 U.S.C. § 213 .......................................................................................... passim
29 U.S.C. § 214 .................................................................................................. 30
29 U.S.C. § 216 ............................................................................................ 12, 18

**Regulations**

16 C.F.R. § 310 ............................................................................................................... 3
29 C.F.R. § 516.2 .............................................................................................. 32, 33, 35
29 C.F.R. § 541.200 ............................................................................................... 24, 26
29 C.F.R. § 541.201 ..................................................................................................... 24
29 C.F.R. § 541.500 ............................................................................................... 29, 30
29 C.F.R. § 541.602 ............................................................................................... 27, 29
29 C.F.R. § 785.11 ....................................................................................................... 22
29 C.F.R. § 785.13 ....................................................................................................... 21
29 C.F.R. § 791.2 .................................................................................... 14, 15, 16, 17

**Federal Rules of Civil Procedure**

FED. R. CIV. P. 56 ................................................................................................. 11, 31

**Ethical Rules for Attorneys**

ABA MODEL RULE 5.3 ........................................................................................... 17, 22
ABA MODEL RULE 5.4 ................................................................................................. 15
ABA MODEL RULE 5.5 ........................................................................................... 17, 28
TEX. DISCP. R. PROF'L CONDUCT 5.03 ................................................................... 17, 22
TEX. DISCP. R. PROF'L CONDUCT 5.04 ......................................................................... 15
TEX. DISCP. R. PROF'L CONDUCT 5.05 ................................................................... 17, 28

### Preliminary Statement

Plaintiffs Brian Parker, Michael Frank, Mark Dailey, and Jeremy Cozart (collectively, "Plaintiffs") filed this collective action under the Fair Labor Standards Act ("FLSA") to recover unpaid overtime wages on behalf of themselves and their similarly situated co-workers. Defendants ABC Debt Relief, Ltd. Co. ("ABC"), The Debt Answer, LLC ("The Debt Answer"), Lloyd Ward, P.C. d/b/a Lloyd Ward & Associates ("Lloyd Ward, P.C."), Lloyd Regner, and Lloyd Ward (collectively, "Defendants") are an integrated "debt settlement" or "debt negotiation" business, and its principals include a lawyer and a law firm. The Plaintiffs fall within two sub-classes of employees who sold and provided the Defendants' services—debt consultants and account specialists (or those performing those job duties regardless of title).

The FLSA requires employers to pay covered employees at a rate of time-and-one-half their regular pay for all overtime hours worked. The undisputed evidence establishes that the debt consultants and account specialists consistently worked in excess of 40 hours in a given workweek for the Defendants, but the Defendants failed to pay the Plaintiffs overtime compensation for all overtime hours worked. The Defendants knew (or at least had reason to believe) that the Plaintiffs were working overtime hours, and they were aware of their legal requirement to comply with the FLSA. However, they failed to do so by withholding overtime compensation from the Plaintiffs.

When employers (such as the Defendants) violate the wage-and-hour provisions of the FLSA, this remedial statute provides a remedy for employees (such as the Plaintiffs) to recover damages in the amount of their unpaid overtime compensation, liquidated damages, costs, and attorney's fees. In this case, the Defendants are considered joint employers of the Plaintiffs based on the "economic realities" of their financially integrated operations, including the involvement

of all Defendants in the payment of the Plaintiffs' wages, as well as the authority and supervision exercised by Mr. Ward and Mr. Regner over the Plaintiffs in their employment conditions, and the power that Mr. Ward possessed, directly and indirectly, to control all Plaintiffs (and the other Defendants) through certain employee-leasing arrangements. All Defendants are thus individually and jointly liable to the Plaintiffs for violating the overtime provisions of the FLSA.

Further, the Defendants cannot meet the burden to prove that any exemption to the overtime requirements of the FLSA (such as the administrative exemption upon which the Defendants apparently premise their defense) entitles them to withhold overtime compensation from the Plaintiffs. In January 2011, a federal district court in California granted summary judgment holding that debt consultants who performed nearly identical job functions as the debt consultants in this case during their employment with another debt settlement company were not exempt from overtime pay under the administrative exemption (or any other exemption) as a matter of law.[1] Likewise, the Plaintiffs, including both the debt consultants and accounts specialists, are not subject to any exemptions to the FLSA's overtime provisions. The Defendants cannot meet their burden to prove any of their other affirmative defenses or requests for affirmative relief. Accordingly, the Defendants are liable to the Plaintiffs for violating the FLSA as a matter of law, and the Plaintiffs respectfully request that the Court grant summary judgment to hold the Defendants liable for willfully refusing to pay the Plaintiffs the wages that they have lawfully earned.

---

[1]   *Kluss, et al. v. Credit Exchange Corp, et al.*, Case No. SACV 09-00080-CJC(MLGx), Order Granting in Part Plaintiffs' Motion for Partial Summary Judgment (C.D. Cal. Jan. 27, 2011) (PACER), at *7-8 (holding that debt settlement company employer failed to prove that debt consultant employees were exempt from the overtime provisions of the FLSA under the administrative exemption) (App. 231-232).

**Statement of Material Facts**

**1.      All of the Defendants jointly employed the Plaintiffs.**

Defendant Lloyd Regner and non-party Kevin DeVoto own and control Defendants ABC and The Debt Answer, which are engaged in the debt settlement business.[2] Mr. Regner is the CEO with general oversight of the day-to-day operations, the power to hire and fire, and the responsibility for implementing and enforcing compensation policies and overtime classification for the Plaintiffs.[3] In 2009, Messrs. Regner and DeVoto entered into an arrangement with Defendant Lloyd Ward, an attorney, apparently to take advantage of certain regulatory carve-outs available to a debt settlement business under the putative umbrella of a lawyer in many states and following the U.S. Federal Trade Commission's promulgation of a new rule that significantly altered the landscape of the debt settlement industry.[4] Since 2009, the Defendants have offered the "Lloyd Ward Product," touting and capitalizing upon their affiliation with Mr. Ward's law firms, operating under a variety of names, including Lloyd Ward, P.C., Lloyd Ward & Associates, The Lloyd Ward Group, and Lloyd Ward Law Firm.[5] Mr. Ward is the sole shareholder of Defendant Lloyd Ward, P.C.[6] Mr. Ward has the power to hire and fire, set salaries, set working hours, and set duties and obligations for the Plaintiffs.[7] Indeed, Messrs. Ward, Regner, and DeVoto are business partners.[8]

---

[2]     *See* Deposition of Lloyd Regner at 35:3-44:14 (App. 270-272); Minutes of the Special Meeting of the Manager of The Debt Answer, LLC (App. 1).

[3]     *See id.*; Defendants' Supplemental Responses to Plaintiffs' First Set of Interrogatories at 3 (Response to Interrogatory No. 3) (App. 89); Deposition of Rickey Longo at 109:19-110:6 (App. 246).

[4]     *See* Regner Depo. at 121:5-122:8 (App. 278); Employee Lease and Services Agreement (App. 40-46); *see also* 16 C.F.R. § 310 (adopting amendments to the telemarketing sales rule for debt relief services).

[5]     *See* Regner Depo. at 76:1-22 (App. 275).

[6]     *See id.*; Deposition of Lloyd E Ward, Esq. at 19:14-20:8 (App. 259); Deposition of Rickey Longo at 213:10-214:21 (App. 253).

[7]     *See id.*

[8]     *See* Oct. 21, 2010 E-Mails between L. Ward and K. DeVoto re: May I Share (Lloyd Ward states, "Kevin [] First, I feel blessed by you also, you are more than a partner you are also a friend, and believe me, I can count

Under certain employee-leasing arrangements, the Defendants have shared the Plaintiffs' employment, and companies owned by Messrs. Regner and Devoto, including ABC, have provided payroll, marketing, sales, and customer relations services to Mr. Ward's law firms in exchange for an annual fee.[9] In return, Mr. Ward receives income distributions from ABC and other entities owned by Messrs. Regner and DeVoto.[10] Mr. Ward exercised "ultimate authority" over the employee's leased by ABC to his law firm, and, in turn, Mr. Ward directly or indirectly controlled ABC's business operations.[11] Further, since at least 2009, the Plaintiffs' wages have been paid by ABC, reimbursed by one of the Mr. Ward's law firms, and then reconciled among the Defendant-entities and their affiliates.[12] (RegDev, an entity owned by Messrs. Regner and DeVoto, appears to have replaced ABC's role in mid-2011, but this compensation structure remains otherwise intact.[13]) Even still, Messrs. Ward, Regner, and DeVoto are shareholders of The Lloyd Ward Group, a professional law corporation and an "operating division" of Lloyd Ward, P.C.[14] The Lloyd Ward Group services the Defendants' clients, including clients

---

my friends on one hand and have fingers left to spare.") (App. 152); Mar. 9, 2010 E-Mail from R. Longo to L. Ward and A. Ward re: BDO Financials & Forecasts (attaching "a file with our BDO financials, Receivables and partner payment tracking.") (App. 155-164); Regner Depo. at 142:19-144:15 (admitting that the "Best Debt Options" product involved distributions to Messrs. Ward, Regner, and DeVoto) (App. 280).

[9]   *See* Employee Lease and Services Agreement (App. 40-46); Employee Lease and Services Agreements between The Lloyd Ward Group and RegDev (App. 47-60); Regner Depo. at 65:22-25 (App. 274).

[10]  *See* Ward Depo. at 102:7-103:17 (App. 264); Longo Depo. at 172:7-174:16 (App. 248-249); Regner Depo. at 134:20-23 (App. 279).

[11]  *See* Employee Lease and Services Agreement (App. 40-46).

[12]  *See* Longo Depo. at 50:18-53:25 (App. 244-245) (explaining the payment arrangement among the entities); Ward Depo. at 40:4-7 (App. 40) (admitting that Mr. Ward's law firm reimbursed ABC for employees' salaries); *see also* Compensation Reports for Parker, Cozart, Keel, and Casey (App. 337-358); W-2's for Michael Frank and Mark Dailey (App. 523-526).

[13]  *See* Compensation Reports for The Lloyd Ward Group and RegDev (App. 359-484); Employee Lease and Services Agreements between The Lloyd Ward Group and RegDev (App. 47-60).

[14]  *See* Shareholder Agreement (App. 2-39) (reflecting that Messrs. Regner and DeVoto each own 42.5% of the shares of The Lloyd Ward Group, while Mr. Ward owns 15% of the shares); Client Services Agreement (App. 77-82) (identifying "The Lloyd Ward Group, LLC," which does not appear to exist, as an "operating division" of Lloyd Ward, P.C.); Ward Depo. at 12:4-24 (App. 258) (testifying that The Lloyd Ward Group serviced the Defendants' clients).

---

transferred from The Debt Answer to Lloyd Ward, P.C., and also pays the salaries for certain of the Plaintiffs.[15]

In the scope of their employment, the Plaintiffs held themselves out as employees of Mr. Ward and his law firms as mandated by their supervisors (who received their marching orders from Mr. Ward and Mr. Regner). The debt consultants were instructed to use a signature block for their e-mails that identified them as employees of "Lloyd Ward & Associates," and the debt consultants were also instructed that their voicemails "need to reference Lloyd Ward Law Firm."[16] Many of the debt consultants and account specialists sent e-mails using the "Lloyd Ward & Associates" signature block, and account specialist Johnny Keel sent letters on the Lloyd Ward, P.C. letterhead discussing "our debt management program."[17] At least seven of these e-mails were forwarded to Lloyd Ward.[18] The account specialists were required to answer calls by stating, "Thanks for calling the Law office of Lloyd Ward and Associates. This is (name) how can I assist you?"[19] Account specialist Jeremy Cozart testified that Mr. Ward attended and spoke during weekly departmental meetings.[20] Certainly, Mr. Ward cannot now deny that the Plaintiffs are his employees. Nor can any of the other Defendants.

In January 2010, well after this case was filed, Kevin DeVoto sent Mr. Ward a list of "the 'Possibles' as far as someone asking if such and such person works for you… although many would not be on any payroll per se… I just wanted to be safe[.]"[21] Mr. DeVoto's e-mail reflects

---

[15]   *See* Ward Depo. at 12:4-24 (App. 258); *see also* Compensation Reports for The Lloyd Ward Group (App. 359-431).

[16]   June 7, 2010 E-Mail from K. Britt to ALL SALES re: Signature for Lloyd Ward (App. 211); June 1, 2010 E-Mail from K. Britt to ALL SALES re: Lloyd Ward (ABC) Insidesales: VOICEMAIL (App. 209-210).

[17]   *See* E-Mails with Lloyd Ward & Associates and Lloyd Ward, P.C. Signature Blocks and Keel Letter on Lloyd Ward, P.C. Letterhead (App. 182-203).

[18]   *See id.* (App. 183, 186, 189, 190, 191, 192, 295).

[19]   *See* June 30, 2010 E-Mail from K. Jackson to Client Service re: Greeting (App. 212).

[20]   Deposition of Jeremy Cozart at 203:7-24 (App. 334).

[21]   Jan. 29, 2010 DeVoto E-Mail (App. 83-86).

an admission of joint employer liability, as the attached list, which was prepared by The Debt Answer's accounting supervisor, includes named-Plaintiffs Brian Parker and Michael Frank, opt-in Plaintiffs Dana Block, Jessica Casey, John Nelson, David Pendley, and Robert Roberts, as well as a number of debt consultants and account specialists in the putative class.[22] In December 2010, Rickey Longo, the CFO and COO for ABC and the Debt Answer (who handled the books for nearly all of the Defendants' operations), sent Mr. Ward an e-mail, stating: "So glad we can now finally combine the financials the way we are."[23] This acknowledgment that the Defendants comingled their finances, payroll, and employees is further shown when the Defendants began transferring clients from The Debt Answer to Lloyd Ward as early as October 2010 (and apparently without consideration).[24] Lloyd Ward, P.C. purchased The Debt Answer's assets effective January 1, 2011, including, without limitation, thousands of customer accounts and certain telephone equipment used for work by the Plaintiffs on a daily basis.[25]

**2.      The debt consultants were the Defendants' inside salesmen paid by commission.**

The debt consultants (who are also referred to as "debt analysts" or "senior debt analysts") were the Defendants' sales force required to make hundreds of telephone calls a day and at least 20 deals or "net impacts" per week.[26] This was a true "boiler room" operation. Khris DeVoto (Kevin's brother) made that clear when he e-mailed the debt consultants a list of the employees who had not yet met their monthly quota of 20 sales or "net impacts," stating: "In the

---

[22]  *See id.* at 1 (App. 83); *compare id.* at 3-4 (App. 85-86) *with* Putative Class List (App. 204-208).

[23]  Dec. 7, 2010 E-Mail from R. Longo to L. Ward re: Combined Financials (App. 123).

[24]  *See* Oct. 18, 2010 E-Mail from R. Longo to L. Ward, L. Regner, and K. DeVoto re: Connecticut Letter on License for State (with attachment) ("Please read the attached letter. We need to answer them. We have transferred 23 clients from TDA to Lloyd Ward. What would be a good response for them since the clients are no longer with TDA?") (App. 165).

[25]  *See* Asset Purchase Agreement (App. 61-76).

[26]  *See , e.g.,* Nov. 20, 2009 E-Mail from Khris DeVoto to Sales cc: Kevin DeVoto (App. 169-170); Dec. 9, 2009 E-Mail from Khris DeVoto to Sales (identifying 20 net impacts as the "minimum performance requirement") (App. 171-173).

**past**, this has been an acceptable list to be on. ***That is no longer the case.*** The clock is ticking. Thanksgiving is not an acceptable excuse for not hitting your numbers."[27] The debt consultants' job duties involved pursuing leads and contacting potential customers to sign them up for the Defendants' program, and their decision-making was restricted by the Defendants' established guidelines, procedures, and call scripts.[28] Contrary to the pleaded affirmative defenses, the debt consultants did not perform any "administrative" functions. The debt consultants were paid on a commission-only basis driven by their sales volume—not a pre-determined amount—and they are also compensated with bonuses and prizes such as beach vacations.[29] Initially, they are paid a "draw," which is really a payment advance that ceases when debt consultants make enough referrals or sales to earn a commission (and then is deducted from their commissions).[30] Debt consultants' compensation therefore is dependent on the number of successful referrals and consummated sales. When no referrals or sales are made, debt consultants receive no pay, as they no longer receive the "draw" advance once they begin earning their commissions.[31] They would also be fired, as Kevin DeVoto testified:  "I don't know that we would have -- as a rule, would have wanted to keep somebody two months on a draw."[32]

3.       **The account specialists provided the services that the Defendants sold to clients.**

        The account specialists provided the actual product for which the Defendants' business was established:  the debt settlement and negotiation services. The account specialists completed

---

[27]    Nov. 20, 2009 Email from Khris DeVoto cc: Kevin DeVoto to Sales re: Minimum Sales (App. 169).

[28]    *See, e.g.,* LWG & DMP Script (App. 143-150).

[29]    *See, e.g.,* Feb. 11, 2010 E-Mail re: Bahama Breeze (reflecting a competition among the debt consultants for a trip to the Bahamas to be "paid by the Company" based on sales performance) (App. 174-181).

[30]    *See* Deposition of Kevin DeVoto 54:13-59:10 (testifying that the "draw is essentially an advance") (App. 287).

[31]    *See id.* (testifying that debt consultants would not be on draws very long, and that the Defendants would not likely continue to employ a debt consultant that remained on a draw for two months); Regner Depo. at 101:1-25 (testifying that the debt consultants were paid 100% commission except for the "draw period") (App. 277).

[32]    *Id.* at 58:22-23 (App. 288).

the enrollment process for the Defendants' customers, were involved with customer relations, and were obligated to call at least 80 clients per day.[33] The account specialists were also involved with the legal operations of Mr. Ward and his law firms. Some of the account specialists, such as Jessica Casey and Victoria Castillo, aided in the negotiation of debts under the supervision of Lloyd Ward's law firms, and these individuals were also referred to as "legal assistants" or "negotiators." [34] When these account specialists became involved with a client, they took over all customer service functions, and all account specialists worked on aspects of the legal operations.[35] Like the debt consultants, account specialists were not permitted to exercise sole discretion and independent judgment, and they had scripts, procedures, and other guidelines that they were required to follow.[36] Moreover, even the exercise of independent judgment and discretion by the account specialists or debt consultants would not be sufficient to place them within the administrative exemption.[37] Account specialists were paid on an hourly basis until the Defendants changed their compensation to salary during 2011 (when they began to receive paychecks from The Lloyd Ward Group), and they had a monthly bonus program determined by client retention and the number of telephone calls and e-mails sent to clients.[38] The account specialists appear to have been transitioned from hourly to salary by the Defendants to avoid the overtime requirements of the FLSA, as these Plaintiffs, including Jessica Casey and

---

[33]    *See* Cozart Depo. at 103:9-104:4 (App. 331).

[34]    *See* Deposition of Jessica Casey at 166:13-168:21 (App. 298); Deposition of Victoria Castillo at 31:4-32:8 (App. 302).

[35]    *See id.*; Casey Depo. at 181:6-182:3 (testifying that negotiators performed the customer service functions once they became involved with a client) (App. 299-300); Cozart Depo. at 24:1-6 (testifying that customer service and negotiators "take care of the customer after the sale"), 185:16-186:6 (testifying that Mr. Cozart dealt with clients who had been sued to some degree) (App. 327, 333).

[36]    *See, e.g.,* Welcome Call Checklist (App. 151) (listing certain questions that the account specialists were required to ask new customers).

[37]    *See infra*.

[38]    *See* Casey Depo. at 125:16-126:1 (App. 295-296); *see also* Compensation Reports for Casey, Keel, and Cozart (App. 339-358); Account Specialist / Legal Assistant Monthly Bonus Program (App. 241-242).

---

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          Page 8**

Jeremy Cozart, were no longer paid overtime after the changeover.[39] Despite the change, the account specialists' salaries remained subject to reduction based on the number of hours worked.[40]

**4.      The Plaintiffs were not properly compensated for all overtime hours worked.**

The debt consultants and account specialists consistently worked more than 40 hours in a given workweek for the Defendants.[41] Indeed, the Defendants required the Plaintiffs to work for *at least* 40 hours per week.[42] The Plaintiffs were required by the Defendants to meet performance goals regardless of the amount of time that they worked or whether overtime was necessary.[43] As account specialist Jeremy Cozart explained: "My hours were still – schedule was 8:00 to 5:00, but we were still required to do whatever it took to get the job done. If it meant working in excess of 40, they expected us to do that."[44]

---

[39]   *Compare* Timesheets for Casey and Cozart (App. 494-522) *and* Casey Depo. at 65:21-25 (App. 293) *with* Compensation Reports for Casey and Cozart (App. 339-344, 351-359); *see also* Casey Depo. at 125:16-126:1 (testifying that the change from hourly to salary compensation coincided with her paychecks originating from The Lloyd Ward Group instead of ABC) (App. 295-296).

[40]   *See, e.g.,* Jan. 27, 2011 Bixler E-Mail (penalizing certain accounts specialists by changing their compensation from salary back to hourly and explaining that their salaries would be reduced if they did not work at least 40 hours per week) (App. 124).

[41]   *See* Timesheets for Frank, Keel, Casey, and Cozart (reflecting multiple workweeks during which these Plaintiffs worked in excess of 40 hours) (App. 485-522); *see also* Deposition of Michael Frank at 78:2-9 (Mr. Frank, a debt consultant, testified that he worked 50 to 60 hours per workweek.) (App. 323); Deposition of Brian Parker at 112:13-114:7 (Mr. Parker, a debt consultant, testified that he worked approximately 54 to 63 hours per workweek.) (App. 316-317); Deposition of Johnny Keel at 162:12-22 (Mr. Keel, an account specialist, testified that he worked about 10 to 12 overtime hours per workweek.) (App. 306); Casey Depo. at 135:10-18 (Ms. Casey, an account specialist, testified that she worked approximately 10 to 15 overtime hours per workweek.) (App. 297); Cozart Depo. at 81:2-14, 123:3-17 (Mr. Cozart, an account specialist, testified that he was scheduled to work at least 40 hours per week but required to work more time to meet his goals, and that he worked an average of 10 to 12 off-the-clock hours per week) (App. 329, 332).

[42]   *See* Mar. 3, 2010 E-Mail from Khris DeVoto to ALL SALES re: Schedule (App. 119-122); Jan. 27, 2011 Bixler E-Mail (App. 124); Frank Depo. at 68:25-69:8 (testifying that the Defendants required the Plaintiffs to clock in at least 40 hours per week at the office) (App. 321-322); Parker Depo. at 138:10-139:8 (testifying that the Defendants required him to work at least 40 hours per week) (App. 318).

[43]   *See* Parker Depo. at 100:25-101:15 (testifying that the Defendants required the debt consultants to meet their quota for deals regardless of the amount of time that they were required to work) (App. 314-315); Casey Depo. at 119:7-16 (testifying about her "overwhelming workload" and "not enough time") (App. 294); Cozart Depo. at 102:22-103:18 (testifying that "whether it took 40 hours or it took 60 hours. It didn't matter, they just wanted it done.") (App. 331).

[44]   *See* Cozart Depo. at 81:2-5 (App. 329).

Additionally, the Defendants cannot deny that overtime hours are reflected on their admittedly incomplete records. Mr. Regner acknowledged deficiencies with tracking the Plaintiffs' time even though the Defendants have recognized their legal obligation to keep accurate time and pay records.[45] The Plaintiffs worked "off-the-clock," and the Defendants provided the Plaintiffs with software and access to their computer servers from home in order to do so, but the Defendants' clock-in system was often unavailable to the Plaintiffs from home.[46] Jessica Casey testified that the timesheets produced by the Defendants do not reflect the hours that she worked from November 2009 through March 2010 even though she clocked-in to their system during that time period (and worked overtime).[47]

However, the Defendants failed to compensate the Plaintiffs at a rate of time-and-one-half their regular pay for all hours worked in excess of 40 in a given workweek.[48] For this reason, the Defendants are liable to the Plaintiffs for violating the FLSA's overtime provisions as a matter of law, and summary judgment should be granted on the issue of liability.

### Summary Judgment Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and

---

[45]  *See* Regner Depo. at 90:9-91:3, 200:4-201:12 (App. 276, 281-282); *see also* Employee Lease and Services Agreement at 2 ¶ 2B (App. 41); ABC Employee Handbook at 16 ("Federal and state laws require ABC DEBT RELIEF to keep an accurate record of time worked in order to calculate their employee's pay benefits.") (App. 109).

[46]  *See id.*; Keel Depo. at 162:18-163:1, 163:15-164:15 (testifying that the Defendants allowed him access to their server from home, but not their timesheet software) (App. 306); Parker Depo. at 101:16-103:11 (testifying that the Defendants provided him with software and web-based access to work at home) (App. 315); Cozart Depo. at 101:1-19 (testifying that there were a lot of problems with the Defendants' remote clock-in system), 123:1-17 (testifying that he worked an average of 10 to 12 hours per week from home and off-the-clock) (App. 331-332).

[47]  Casey Depo. at 135:10-18 (App. 297).

[48]  *Compare* Parker Depo. at 112:13-114:7 (App. 316-317); Frank Depo. at 78:2-9 (App. 323); Keel Depo. at 162:12-22 (App. 306); Casey Depo. at 135:10-18 (App. 297); *and* Timesheets for Michael Frank, Johnny Keel, Jessica Casey, and Jeremy Cozart (App. 485-522) *with* Compensation Reports for Parker, Keel, Casey, and Cozart (reflecting that these Plaintiffs were not compensated at a rate of time-and-one-half their regular rate for all hours worked in excess of 40 during a given workweek) (App. 337-358).

the movant is entitled to judgment as a matter of law."[49] A party seeking summary judgment bears the initial responsibility of explaining the basis for its motion and identifying the portions of the pleadings, depositions, responses to written discovery requests, affidavits, and other materials that demonstrate the absence of a genuine issue of material fact.[50] A fact is material if it "might affect the outcome of the suit under the governing law."[51] A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[52] When a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial."[53] The Defendants cannot meet this burden, and the Plaintiffs respectfully request that the Court enter summary judgment on the Defendants' liability.

Further, motions for summary judgment are designed to isolate and dispose of factually unsupported defenses.[54] Where the non-movant bears the burden of proof on the issues for which summary judgment is sought, the movant need only point out that there is an absence of evidence to support the non-movant's position. [55] "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial."[56] The Defendants have had an adequate time to conduct discovery, and summary judgment should be granted to dispose of each of the Defendants' unsupported affirmative defenses as a matter of law.

---

[49] FED. R. CIV. P. 56(a).

[50] FED. R. CIV. P. 56(c)(1).; *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

[51] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[52] *Id.*

[53] *Id.* at 248 (internal citations and quotations omitted).

[54] *Celotex*, 477 U.S. at 323-24.

[55] *Id.* at 325.

[56] *Id.* at 322.

## Argument & Authorities

Plaintiffs move for summary judgment on the issue of Defendants' liability because the evidence establishes that the Defendants violated the overtime-compensation provisions of the FLSA as a matter of law.[57] If an employer violates the wage-and-hour requirements of the FLSA, the employer is liable to the employee for damages, attorney's fees, and costs.[58] Plaintiffs must carry the burden of proof to prevail on their claims for unpaid overtime compensation.[59] The Plaintiffs meet their burden, as the evidence establishes that there is no genuine issue of material fact that the Plaintiffs are covered employees under the FLSA, the Defendants are employers and joint employers, the Plaintiffs were not compensated for all overtime hours worked at a rate of time-and-one-half their regular rate, and the Defendants knew or had reason to believe that the Plaintiffs worked overtime hours, but the Defendants willfully failed to pay all wages due. Further, as a matter of law, the Defendants cannot establish any of their affirmative defenses, including their general allegation that an FLSA exemption applies. Accordingly, the Defendants are liable for damages in the amount of their unpaid overtime compensation, liquidated damages in an equal amount, costs, and attorney's fees. The amount of damages will turn on the number of hours that were worked and the number of Plaintiffs that elect to opt-in to this matter—and there may be genuine issues of material fact as to the absolute number of hours—but the fact that the Plaintiffs (and similarly situated employees) worked more than 40 hours per workweek for the Defendants without receiving the required overtime compensation cannot be disputed, and therefore summary judgment is appropriate on the issue of liability.

---

[57] *See* 29 U.S.C. §§ 207(a)(1), 216(b).

[58] *See id.*

[59] *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686-87 (1946), *superseded by statute on other grounds as stated in IBP, Inc. v. Alvarez,* 546 U.S. 21 (2005).

1.      **The Defendants are employers and joint employers.**

There is no genuine issue of material fact that the Defendants are the employers and joint employers of the Plaintiffs under the FLSA based on the economic realities of their employment, and the ownership interests, rights to income distributions, the supervision and control held by Messrs. Ward and Regner over the Defendant-entities and the Plaintiffs' employment, as well as the operational and financial integration of the Defendants' debt settlement and negotiation business.[60]

When evaluating whether an employee is in an employment relationship with an employer, and when evaluating whether the employee is economically dependent, the courts consider several factors, including:  (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and alleged employer; (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship.[61] "Joint employment" status of multiple employers is generally based on the following factors: (1) whether employment takes place on the premises of the company; (2) how much control the company exerts over the employee; (3) whether the company has the power to fire, hire, or

---

[60]    *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992) (holding that the FLSA defines the employee-employer relationship "expansively" and with "striking breadth"); *Reich v. Circle C Invs., Inc.*, 998 F.2d 324, 329 (5th Cir. 1989) (holding that the FLSA was designed to avoid formalistic or common-law definitions of employment and that the employment relationship is determined by the totality of the circumstances and the "economic realities"); 29 U.S.C. § 203(a), (d) (an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee," including an individual or a business entity); *see also Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669-70 (5th Cir. 1968) (holding that the total employment situation should be considered in determining whether a person or corporation is an employer or joint employer); *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971-72 (5th Cir. 1984) (holding that corporate officer with operational control was an employer under the FLSA); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991) (holding that owner of business was an employer under the FLSA due to the economic realities and his involvement with operations).

[61]    *See Circle C*, 998 F.2d at 329.

modify employment; and (4) whether the employees may refuse to work for the company.[62] The evidence establishes that the Defendants are employers and joint employers based on the totality of the circumstances, the economic realities, and the other relevant considerations.

The Defendants' business arrangement is remarkable. According to the testimony of Lloyd Ward and Rickey Longo and the payment records produced by the Defendants, the Plaintiffs' wages (regardless of their named employer) were variously paid by ABC, reimbursed by Lloyd Ward & Associates or The Lloyd Ward Group, and then reconciled among the Defendant-entities and their affiliates through at least April 2011.[63] After April 2011, the Defendants continued this arrangement except that The Lloyd Ward Group and RegDev took ABC's place in directly compensating the Plaintiffs.[64] (Regardless of the changes, the money flowed from the same sources—entities owned and controlled by Messrs. Ward, Regner, and DeVoto.[65]) In December 2010, Mr. Longo stated to Mr. Ward: "So glad we can now finally combine the financials the way we are."[66] Messrs. Regner and Ward maintain ownership interests or the right to income distributions from each of the Defendant-entities, The Lloyd Ward Group, and RegDev. The evidence thus proves that the Defendants are employers and joint employers of the Plaintiffs based on economic reality.[67]

---

[62]   *See Wirtz*, 405 F.2d at 669-70; 29 C.F.R. § 791.2 (joint employment is established when employers share employees, act in their mutual interests with respect to employees, or control one another).

[63]   *See* Longo Depo. at 50:18-53:25 (App. 244-245) (explaining the payment arrangement among the entities); Ward Depo. at 40:4-7 (App. 40) (admitting that Mr. Ward's law firm reimbursed ABC for employees' salaries); *see also, e.g.*, Compensation Reports for Parker, Cozart, Keel, and Casey (App. 337-358); 2009 and 2010 W-2's for Michael Frank and Mark Dailey (App. 523-526).

[64]   *See* Compensation Reports for The Lloyd Ward Group, PC and RegDev LLC (App. 359-484).

[65]   *See id.*; Ward Depo. at 19:14-20:8, 102:7-103:17 (App. 259, 264); Regner Depo. at 30:3-5, 65:22-25, 141:25-144:15 (App. 269, 274, 280); Minutes of Special Meeting of the Manager of The Debt Answer, LLC (The Debt Answer) (App. 1); Longo Depo. at 172:7-174:16 (App. 248-249); Shareholder Agreement of The Lloyd Ward Group (App. 2-39).

[66]   Dec. 7, 2010 E-Mail from R. Longo to L. Ward re: Combined Financials (App. 123).

[67]   *See Nationwide*, 503 U.S. at 326; *Circle C*, 998 F.2d at 329; *Wirtz*, 405 F.2d at 669-70; 29 C.F.R. § 791.2; *Grim Hotel*, 747 F.2d at 971-72; *Dole*, 942 F.2d at 965.

The Defendant entities have been located in the same building since at least February 2010.[68] The Defendants have engaged in close business agreements that establish control over the Plaintiffs' employment and related operations, including, without limitation:   (1) an Employee Lease and Services Agreement (under which Mr. Ward's law firm leased the employees of ABC, and ABC provided administrative, marketing, sales, and customer services to Mr. Ward); (2) an Asset Purchase Agreement (under which Lloyd Ward, P.C. purchased all customer accounts from The Debt Answer effective January 1, 2011, which accounts were serviced by employees jointly controlled by Messrs. Ward and Regner);[69] and (3) a Shareholder Agreement for The Lloyd Ward Group, P.C., a law firm and "operating division" of Lloyd Ward, P.C., in which shares were owned not only by Mr. Ward,[70] but also Mr. Regner and Mr. DeVoto (who are not attorneys).[71] Through these arrangements, the evidence demonstrates that ABC, The Debt Answer, and Lloyd Ward, P.C. mutually benefitted from and shared the Plaintiffs'

---

[68]   *See* Ward Depo. at 32:20-33:22 (App. 260-261).

[69]   *See* Longo Depo. at 189:16-199:22 (discussing the supervision, payment, and management by both Messrs. Ward and Regner of employees who were working on the accounts purchased by Lloyd Ward, P.C. from The Debt Answer by virtue of the employee leasing arrangement and their joint ownership of The Lloyd Ward Group) (App. 250-252).

[70]   Neither Mr. Regner nor Mr. DeVoto is an attorney, and their co-ownership of and any right to direct or control a professional corporation law firm with Mr. Ward would appear to violate the attorney ethical rules. *See, e.g.,* TEX. DISCP. R. PROF'L CONDUCT 5.04(d) (stating that a lawyer shall not practice with or in the form of a professional corporation authorized to practice law for a profit if a non-lawyer owns any interest, is a corporate director or officer, or has the right to direct or control the professional judgment of a lawyer); ABA MODEL RULE 5.4(d) (same). In fact, Mr. DeVoto is a convicted felon, and he has been barred from association with any broker or dealer by an order of the US. Securities & Exchange Commission. *See* Criminal Docket Sheet, *U.S. v. Taylor, et al.,* Case No. 30:02-cr-00037-M, U.S. District Court, Northern District of Texas at 2 (App. 214); Order Instituting Public Administrative Proceedings Pursuant to Section 15(b) of the Securities Exchange Act of 1934, Making Findings and Barring from Association with a Broker of Dealer, *In the Matter of Kevin M. DeVoto,* Admin. Proceeding of U.S. Securities & Exchange Commission, File No. 3-11093 (App. 223-224).

[71]   *See* Employee Lease and Services Agreement at 1, 3, ¶ 4A(vi) (App. 40, 42); Asset Purchase Agreement (App. 61-76); Shareholder Agreement of The Lloyd Ward Group (App. 2-39); Client Services Agreement (App. 77-82); Ward Depo. at 12:4-24 (App. 258) (testifying that The Lloyd Ward Group serviced the Defendants' clients).

employment, exercised control over one another and the Plaintiffs' work, and supervised and controlled the Plaintiffs' employment.[72]

On January 29, 2010, well after the filing of the instant case, Kevin DeVoto sent an e-mail to Mr. Ward attaching a list of "the 'Possibles' as far as someone asking if such and such person works for you…"[73] Mr. DeVoto's list includes named-Plaintiffs Brian Parker and Michael Frank and opt-in Plaintiffs Dana Block, Jessica Casey, John Nelson, David Pendley, and Robert Roberts, as well as a number of other members of the putative class, and these individuals are both debt consultants and account specialists.[74] The debt consultants and account specialists were instructed to use a signature block for their e-mails that identified them as working for "Lloyd Ward & Associates," and the debt consultants were also instructed that their voicemails "need to reference Lloyd Ward Law Firm."[75] Account specialist Johnny Keel sent letters with the Lloyd Ward, P.C. letterhead discussing "our debt management program."[76] Some of the e-mails were forwarded to Lloyd Ward.[77] The account specialists were also required to answer calls by stating, "Thanks for calling the Law office of Lloyd Ward and Associates. This is (name) how can I assist you?"[78] Mr. Ward attended and spoke during weekly departmental meetings.[79] Certainly, Mr. Ward cannot deny that the Plaintiffs are his employees.

---

[72]  *See id.*; *see also Wirtz*, 405 F.2d at 669-70; *Grim Hotel*, 747 F.2d at 971-72; *Dole*, 942 F.2d at 966; 29 C.F.R. § 791.2.

[73]  Jan. 29, 2010 DeVoto E-Mail re: Employee List (with attachment) (App. 83-86).

[74]  *See id.* at 3-4 (App. 85-86).

[75]  *See* E-Mails E-Mails of Debt Consultants & Account Specialists with Lloyd Ward & Associates Signature Blocks and Keel Letter on Lloyd Ward, P.C. Letterhead (App. 182-203); June 7, 2010 E-Mail from K. Britt to ALL SALES re: Signature for Lloyd Ward (App. 211); June 1, 2010 E-Mail from K. Britt to ALL SALES re: Lloyd Ward (ABC) Insidesales: VOICEMAIL (App. 209-210).

[76]  *See id.*

[77]  *See id.*

[78]  *See* June 30, 2010 E-Mail from K. Jackson to Client Service re: Greeting (App. 212).

[79]  Cozart Depo. at 203:7-24 (App. 334).

Nor can the other Defendants. Mr. Ward, through his law firm, had "ultimate authority to direct and control the leased employees" from ABC, and the employees were "subject to the supervision and oversight of [Lloyd Ward & Associates] with respect to the employees' dealings with [Lloyd Ward & Associates'] clients."[80] Mr. Ward had the power to hire and fire, set salaries, set working hours, and set duties and obligations for the Plaintiffs.[81] Certain account specialists helped negotiate and settle debts with supervision and authorization from Lloyd Ward's law firms.[82] Indeed, any failure to supervise these legal assistants and negotiators would appear to violate the ethical rules for attorneys and constitute the unauthorized practice of law.[83]

Mr. Regner is an officer of and holds 50% equity interests in ABC and The Debt Answer.[84] Mr. Regner had authority to hire and fire the Plaintiffs, and Mr. Regner implemented and enforced the Defendants' policies and procedures for the compensation and overtime classification of the Plaintiffs based on sworn interrogatory responses.[85] The evidence thus affirmatively establishes as a matter of law that the Defendants are the employers and joint employers of the Plaintiffs under the FLSA.[86]

---

[80]   Employee Lease and Services Agreement at 1 (Background), 2 ¶ 2B, 3 ¶ 4A(iv) (App. 40-46); *see also* Ward Depo. at 19:14-20:8, 20:6-22 (App. 259); Longo Depo. at 109:19-110:6 (App. 246).

[81]   *See id.*

[82]   *See* Casey Depo. at 166:13-168:21 (App. 298); Castillo Depo. at 31:4-32:8 (App. 302).

[83]   *See* TEX. DISCP. R. PROF'L CONDUCT 5.03 (attorneys are responsible for supervising their non-lawyer assistants); ABA MODEL RULE 5.3 (same); TEX. DISCP. R. PROF'L CONDUCT 5.05 (attorneys shall not engage in or assist in the unauthorized practice of law); ABA MODEL RULE 5.5 (same).

[84]   *See* Regner Depo. at 30:3-5, 43:19-24 (ABC) (App. 269, 272); Minutes of Special Meeting of the Manager of The Debt Answer, LLC (The Debt Answer) (App. 1).

[85]   *See* Defendants' Supplemental Responses to Plaintiffs' First Set of Interrogatories at 3 (Response to Interrogatory No. 3) (App. 89); Longo Depo. at 109:19-110:6 (App. 246).

[86]   *See Nationwide*, 503 U.S. at 326; *Circle C*, 998 F.2d at 329; *Wirtz*, 405 F.2d at 669-70; 29 C.F.R. § 791.2; *Grim Hotel*, 747 F.2d at 971-72; *Dole*, 942 F.2d at 965.

**2.      The Defendants failed to adequately compensate Plaintiffs for all overtime hours worked despite knowledge that Plaintiffs worked overtime.**

The Defendants are liable under the FLSA if they "suffered or permitted" Plaintiffs to work overtime hours without receiving adequate compensation.[87] As established by the evidence explained below, the Defendants violated the FLSA's overtime provisions. Further, the Defendants had actual or constructive knowledge that the Plaintiffs were working overtime hours.[88] Accordingly, the three-year statute of limitations applies because the Defendants (which include a lawyer, his law firm, his "non-lawyer" co-shareholders and business partners, and affiliated parties) willfully violated the FLSA, as they knew about or had the opportunity to determine from their own incomplete records of their failure to comply with the obligation to pay overtime (as their own employee handbook and the employee-leasing agreements reference the FLSA or legal requirements to keep time records for the purpose of accurate payment).[89]

**A.      *The Plaintiffs consistently worked more than 40 hours in a given workweek.***

Both debt-consultant and account-specialist Plaintiffs worked more than 40 hours per workweek according to the incomplete time records produced by the Defendants.[90] The

---

[87]   *See Mt. Clemens Pottery*, 328 U.S. at 686-87; *see also* 29 U.S.C. §§ 203(g) ("Employ" includes to suffer or permit to work."), 207(a)(1), 216(b).

[88]   *Reich v. Stewart*, 121 F.3d 400, 406 (8th Cir. 1997) (a court need only inquire whether, under the circumstances, the employer either had knowledge of overtime hours being worked or had the opportunity through reasonable diligence to acquire knowledge); *Reich v. Dep't of Conserv. & Nat. Resources, State of Ala.*, 28 F.3d 1076, 1082 (11th Cir. 1994) ("The reason an employee continues to work beyond his shift is immaterial; if the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted.").

[89]   *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 130 (1988) (willfulness proved by showing employer's knowledge of the violation or a reckless disregard of violations of the FLSA); *see also* ABC Employee Handbook at 16 (App. 109) (noting that ABC must keep accurate time records to comply with their payment obligations under federal and states laws); Employee Lease and Services Agreement at 2, ¶ 2B (App. 41) ("Each employee shall be identified according to workers' compensation classification by proper code and according to pay status under the Fair Labor Standards Act or any other rule or regulation that may apply.")..

[90]   *See* Timesheets for Frank, Keel, Casey, and Cozart (reflecting multiple workweeks during which these Plaintiffs worked in excess of 40 hours) (App. 485-522); *see also* Casey Depo. at 135:10-18 (Ms. Casey testified that the timesheets produced by the Defendants do not reflect the time she clocked-in from November 2009 through March 2010.) (App. 297).

---

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          Page 18**

Defendants failed to produce any documents reflecting the time worked by Plaintiff Brian Parker, and Mr. Regner acknowledged deficiencies and inaccuracies with respect to the Defendants' tracking of the Plaintiffs' work time.[91]

When employers fail to keep time records as required by the FLSA, an employee carries his burden by providing evidence of the amount of overtime worked based on a just and reasonable inference.[92] Plaintiffs Frank, Parker, Keel, Casey, and Cozart (debt consultants and account specialists) testified that they worked more than 40 hours during the average workweek, including off-the-clock time.[93] This testimony, coupled with Defendants' incomplete time records (which independently prove overtime worked), establish that uncompensated overtime was worked.[94] The burden now shifts to the Defendants to come forward with evidence of the precise amount of work performed or to negate Plaintiffs' testimony.[95] Thus, the question is not whether overtime was worked, but only the absolute amount of uncompensated overtime.

### B. *The Defendants did not compensate Plaintiffs for all overtime hours worked.*

Under the FLSA, no employer shall employ any employees who in any workweek are engaged in commerce for more than 40 hours unless such employees receive compensation for overtime at a rate not less than one-and-one-half times the employees' regular pay rate.[96] The debt consultants and account specialists worked in interstate commerce, as their primary duties

---

[91] *See* Regner Depo. at 90:9-91:3, 200:4-201:12 (App. 276, 281-282).

[92] *See Mt. Clemens Pottery*, 328 U.S. at 687; *Stewart,* 121 F.3d at 406 (holding that employers cannot be permitted to benefit from their failure to maintain records).

[93] *See* Frank Depo. at 78:2-9 (debt consultant testified to working 50 to 60 hours per workweek.) (App. 323); Parker Depo. at 112:13-114:7 (debt consultant testified to working approximately 54 to 63 hours per workweek.) (App. 316-317); Keel Depo. at 162:12-22 (account specialist testified to working about 10 to 12 overtime hours per workweek.) (App. 306); Casey Depo. at 135:10-18 (account specialist testified to working approximately 10 to 15 overtime hours per workweek.) (App. 297); Cozart Depo. at 81:2-14, 123:3-17 (account specialist testified to working at least 40 hours per week but required to work more time to meet his goals, and that he worked an average of 10 to 12 off-the-clock hours per week) (App. 329, 332).

[94] *See Mt. Clemens Pottery*, 328 U.S. at 687; *Stewart,* 121 F.3d at 406.

[95] *See id.*; 29 U.S.C. 207(a)(1).

[96] *See* 29 U.S.C. § 207(a)(1).

involved speaking on the telephone to sell or provide the Defendants' services to customers across state lines.[97] Demonstrating the nature of this interstate commerce, the State of Connecticut has entered two separate orders during 2011 against The Debt Answer and The Lloyd Ward Group ordering them to cease and desist from selling their debt negotiation services in Connecticut, ordering the repayment of fees, and imposing a $1,210,000 civil penalty against The Debt Answer and a $500,000 civil penalty against The Lloyd Ward Group.[98] It is not disputed that the Defendants conducted business across state lines. Further, the Plaintiffs were not compensated for all hours worked in excess of 40 hours in a given workweek according to the time and payment records produced by the Defendants, which fail to reflect overtime compensation for multiple workweeks during which the Plaintiffs worked more than 40 hours.[99] The evidence establishes that there is no genuine issue of material fact to dispute that the Plaintiffs were not compensated for all hours worked in excess of 40 in a given workweek.[100]

### C.    *The Defendants knew (or could have known) that Plaintiffs worked overtime.*

An employee must be compensated for overtime if the employer "knows or has reason to believe" the employee worked overtime.[101] The evidence is undisputed that the Defendants knew or could have determined with reasonable diligence that the debt-consultant and account-specialist Plaintiffs worked overtime hours (on- and off-the-clock), as the Defendants required

---

[97]    *See* 29 U.S.C. § 203(b) (defining "commerce"); *see also, e.g.,* Regner Depo. at 53:6-18 (App. 273); Longo Depo. at 117:2-10 (App. 247); Casey Depo. at 65:21-25 (App. 293).

[98]    *See In re: The Debt Answer LLC,* State of Connecticut, Dep't of Banking, Order to Cease and Desist, Order of Repayment of Fees, and Order Imposing Civil Penalty (June 7, 2011) (App. 527-532); *In re: The Lloyd Ward Group, P.C., et al.,* State of Connecticut, Dep't of Banking, Order to Cease and Desist, Order of Repayment of Fees, and Order Imposing Civil Penalty (Sept. 9, 2011) (App. 533-536).

[99]    *Compare* Keel Depo. at 162:12-22 (App. 306); Casey Depo. at 135:10-18 (App. 297); Cozart Depo. at 81:2-14, 123:3-17 (329, 332); *and* Timesheets for Keel, Casey, and Cozart (App. 485-522) *with* Compensation Reports for Keel, Casey, and Cozart (showing that Plaintiffs were not provided overtime compensation for all hours worked in excess of 40) (App. 337-358).

[100]   *See id.*; *see also* U.S.C. § 207(a)(1).

[101]   *See Stewart,* 121 F.3d at 407; *Dep't of Conserv.,* 28 F.3d at 1082.

both sub-classes of Plaintiffs to work or remain at their offices for at least 40 hours per week, and the Defendants' own records reflect overtime worked.[102] Jeremy Cozart testified that the Defendants expected him to work overtime:

> Well, they religiously told us this is not a 40-hour workweek or this job is not a 40-hour-a-week job. So they told us whatever it takes to get everything done, otherwise you're basically looking at not having a job.[103]

The Defendants cannot disclaim knowledge of off-the-clock overtime hours because, in addition to requiring the Plaintiffs to clock at least 40 hours per week at the office, they provided the Plaintiffs with computer access to work from home.[104] ABC's Employee Handbook states: "Overtime work must always be approved before it is performed."[105] In some cases, the Defendants did approve overtime hours.[106] And the Plaintiffs' consistent overtime work reflects at least tacit approval and constructive knowledge of overtime being worked.[107] Further:

> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.[108]

---

[102] *See* Mar. 3, 2010 E-Mail from Khris DeVoto to ALL SALES re: Schedule (App. 119-122) (reflecting that debt consultants were required to work at least 40 hours per week); Jan. 27, 2011 Bixler E-Mail (App. 124) (reflecting that account specialists were required to work at least 40 hours per week); Frank Depo. at 68:25-69:8 (testifying that Defendants required employees to clock at least 40 hours per week at the office) (App. 321-322); Parker Depo. at 138:10-139:8 (testifying that he was required to work at least 40 hours per week) (App. 318); Timesheets for Frank, Keel, Casey, and Cozart (reflecting workweeks when they worked more than 40 hours) (App. 485-522); Regner Depo. at 201:6-12 (acknowledging that the Defendants required the Plaintiffs to be at the office for at least 40 hours per week) (App. 282).

[103] Cozart Depo. at 67:6-10 (App. 328).

[104] *See id.*; Keel Depo. at 162:18-163:1, 163:15-164:15 (Defendants allowed home computer access, but not to timekeeping software) (App. 306); Parker Depo. at 101:16-103:11 (Defendants provided software and web-based access to work at home) (App. 315); *see also Wirtz*, 405 F.2d at 670 ("A person or corporation cannot take an 'ostrich-like attitude' and still be in good faith under the Fair Labor Standards Act.").

[105] ABC Employee Handbook at 16 (App. 109).

[106] *See* Cozart Depo. at 95:23-96:4 (testifying that the Defendants generally approved his overtime hours while he was paid by the hour) (App. 330).

[107] *Stewart*, 121 F.3d at 407 (holding that work for the employer's benefit and with tacit approval must be included in determining whether overtime compensation is statutorily required).

[108] 29 C.F.R. § 785.13.

---

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT          Page 21**

Indeed, "[w]ork not requested but suffered or permitted is work time."[109]

The Plaintiffs were required by the Defendants to meet performance goals regardless of the amount of time that they worked or whether overtime was necessary.[110] Any professed ignorance of the overtime worked by the account specialists who performed legal work for Mr. Ward would be troubling, as that would indicate a lack of supervision by Mr. Ward, and these individuals had to be supervised according to the ethical rules.[111] Accordingly, the evidence demonstrates that the Defendants had actual or constructive knowledge that the Plaintiffs were working overtime hours as a matter of law.[112]

### D. *The three-year statute of limitations applies because Defendants willfully violated the FLSA.*

At least some of the account specialists were transitioned from hourly to salary compensation in an apparent effort to side-step the overtime requirements of the FLSA, as these Plaintiffs, including Jessica Casey and Jeremy Cozart, were no longer paid overtime after the transition.[113] Defendants cannot avoid overtime obligations by recasting employees as salaried employees from hourly.[114] These actions establish the Defendants' knowledge of the overtime requirements for the account specialists (which in turn shows willfulness), especially because that these employees largely worked for Mr. Ward and his law firm, and the transition coincided

---

[109] 29 C.F.R. § 785.11.

[110] *See* Parker Depo. at 100:25-101:15 (debt consultants required to meet quota regardless of required time) (App. 314-315); Casey Depo. at 119:7-16 (testifying about her "overwhelming workload" and "not enough time") (App. 294).

[111] *See* TEX. DISCP. R. PROF'L CONDUCT 5.03 (attorneys are responsible for supervising non-lawyer assistants); ABA MODEL RULE 5.3 (same).

[112] *See Stewart,* 121 F.3d at 407; *Wirtz,* 405 F.2d at 670; *Dep't of Conserv.,* 28 F.3d at 1082.

[113] *Compare* Timesheets for Casey and Cozart (App. 485-522) *and* Casey Depo. at 65:21-25 (App. 293) *with* Compensation Reports for Casey and Cozart (App. 337-358); *see also* Casey Depo. at 125:16-126:1 (testifying that the change from hourly to salary compensation coincided with her paychecks originating from The Lloyd Ward Group instead of ABC) (App. 295-296).

[114] *See, e.g., Cash v. Conn Appliances, Inc.,* 2 F.Supp.2d 884, 903 (E.D. Tex. 1997) (holding that employers paying their employees on a salary basis must comply with the overtime provisions of the FLSA).

with employees receiving their paychecks from The Lloyd Ward Group.[115] The debt consultants were also required to work overtime, but not fully compensated, and the Defendants willfully violated the FLSA's overtime requirements for these individuals as well.[116] The Defendants acknowledged their obligations to comply with the FLSA and to keep accurate time and pay records in their employee handbook and internal contracts.[117] The Employee Lease and Services Agreement between ABC and Lloyd Ward & Associates states, "Each employee shall be identified according to workers' compensation classification by proper code and according to pay status under the Fair Labor Standards Act or any other rule or regulation that may apply."[118] Despite this clear statement, the Defendants failed comply with the FLSA, rendering their violations willful as a matter of law.[119] Therefore, the three-year statute of limitations applies.[120]

### 3.    The Plaintiffs are non-exempt employees under the FLSA.

The Defendants pleaded the affirmative defense allegedly "[w]ithout assuming the burden of proof" that the Plaintiffs are supposedly exempt from the overtime provisions of the FLSA under 29 U.S.C. § 213.[121] Despite this apparent desire to avoid shouldering the weight, a defendant-employer claiming an exemption bears the burden of proving that the exemption

---

[115]   *See* Casey Depo. at 125:16-126:1 (App. 295-296).

[116]   *See* Parker Depo. at 100:25-101:15 (debt consultants required to meet quota regardless of required time) (App. 314-315); Frank Depo. at 68:25-69:8 (testifying that Defendants required employees to clock at least 40 hours per week at the office) (App. 321-322); Timesheets for Frank (reflecting workweeks when he worked more than 40 hours) (App. 485-522); ABC Employee Handbook at 16 (App. 109).

[117]   *See* Employee Lease and Services Agreement at 2 ¶ 2B ("Each employee must be identified according to workers' compensation classification by proper code and according to pay status under the Fair Labor Standards Act or any other rule or regulation that may apply.") (App. 41); ABC Employee Handbook at 16 ("Federal and state laws require ABC DEBT RELIEF to keep an accurate record of time worked in order to calculate their employee's pay benefits.") (App. 109).

[118]   Employee Lease and Services Agreement at 2, ¶ 2B (App. 41).

[119]   *See Stewart,* 121 F.3d at 407; *Wirtz,* 405 F.2d at 670 ("A good faith effort to comply with the Act would have included checking [the employer's] records and any further investigation necessary to ascertain the facts."); *Dep't of Conserv.,* 28 F.3d at 1082; *see also Richland Shoe*, 486 U.S. at 130-35 (1988) (defining the willfulness standard required for the three-year, instead of two-year, statute of limitations to apply to an FLSA claim).

[120]   *See Richland Shoe*, 486 U.S. at 130-35

[121]   (*See* Doc. 80 at 8-9, ¶ 50.)

applies.[122] Given the remedial nature of the FLSA, exemptions are to be narrowly construed against employers and granted only in situations plainly and unmistakably within the terms and spirit of the FLSA.[123] Although factually intensive, the ultimate decision as to whether an exemption applies is a question of law.[124] The Defendants cannot prove that the Plaintiffs are exempt from the FLSA under 29 U.S.C. § 213 or establish any other of exemption to the FLSA.

### A.    *The "administrative exemption" does not apply.*

The Defendants apparently rely upon the "administrative exemption," but this exemption applies only to employees who perform "administrative" duties and are paid on a salary basis.[125] An employee qualifies as "administrative" only if the employee's primary duty:  (1) is the performance of work directly related to the management or general business operations of the employer; and (2) includes the exercise of discretion and independent judgment with respect to matters of significance.[126] The phrase "directly related to the management or general business operations" refers to assisting with the internal operations of the employer's business, as distinguished from selling or providing the employer's services.[127] This exemption thus applies to employees who are running the business or determining its overall course or policies—not employees carrying out the day-to-day affairs of the business and producing the services for which the enterprise exists (such as the debt consultants and account specialists).[128]

---

[122]   *See Idaho Sheet Metal Works v. Wertz*, 383 U.S. 190, 206, 209 (1966); *Reich v. Newspapers of New England*, 44 F.3d 1060, 1070 (1st Cir. 1995); *Magana v. Commonwealth of the Northern Mariana Islands,* 107 F.3d 1436 (9th Cir. 1997).

[123]   *See Arnold v. Ben Kanowsky*, 361 U.S. 388, 392 (1960); *Newspapers of New England*, 44 F.3d at 1070.

[124]   *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1225-26 (5th Cir. 1990) .

[125]   *See* 29 U.S.C. § 213(a)(1); *Auer v. Robbins*, 519 U.S. 452, 455 (1997).

[126]   *See* 29 C.F.R. § 541.200(a)(2)-(3).

[127]   *See* 29 C.F.R. § 541.201(a).

[128]   *See Bratt v. Cty. of Los Angeles*, 912 F.2d 1066, 1069-70 (9th Cir. 1990) (holding that the administrative exemption did not apply to probation officers and child treatment counselors); *Casas v. Conseco Finance Corp.*, No. Civ. 00-1512, 2002 WL 507059, at *6-10 (D. Minn. Mar. 31, 2002) (holding that loan originators responsible for soliciting, selling, and processing loans over the telephone, as well as identifying, modifying,

---

      i.     *The administrative exemption does not apply to debt consultants.*

Earlier this year, a federal district court in California granted summary judgment holding that debt consultants were not exempt from overtime pay under the administrative exemption as a matter of law.[129] This is because debt consultants are sales or "production"—not administrative—employees, as their business purpose is to sell the debt settlement services to customer and clients. The debt consultants are tasked with day-to-day sales functions rather than running the business or determining its policies, and they are non-exempt "production" employees, as the California court determined.[130] The Plaintiffs respectfully request that the Court follow the precedent of the California court's ruling and hold that the debt consultants are non-exempt under the administrative exemption as a matter of law.

Last year, the Department of Labor issued an opinion letter[131] regarding mortgage loan officers with analogous duties as debt consultants.[132] Like debt consultants, the mortgage loan

---

and structuring the loan to fit a customer's financial needs were not subject to the administrative exemption); *Reich v. Chicago Title Ins. Co.*, 853 F.Supp. 1325, 1330 (D. Kan. 1994) (holding that escrow closers for insurance company did not perform administrative duties); *Martin v. Cooper Electric Supply Co.*, 940 F.2d 896, 903 (3d Cir. 1991) (holding that inside salespersons who occasionally advised customers of additional products and negotiated on behalf of the company to make sales did not perform "administrative work," and the administrative exemption therefore does not apply to them); *Kluss, et al. v. Credit Exchange Corp, et al.*, Case No. SACV 09-00080-CJC(MLGx), Order Granting in Part Plaintiffs' Motion for Partial Summary Judgment (C.D. Cal. Jan. 27, 2011) (PACER), at *7-8 (holding that debt settlement company employer failed to prove that debt consultant employees were exempt from the overtime provisions of the FLSA under the administrative exemption) (App. 231-232).

[129] *Kluss, et al. v. Credit Exchange Corp, et al.*, Case No. SACV 09-00080-CJC(MLGx), Order Granting in Part Plaintiffs' Motion for Partial Summary Judgment (C.D. Cal. Jan. 27, 2011) (PACER), at *7-8 (holding that debt settlement company employer failed to prove that debt consultant employees were exempt from the overtime provisions of the FLSA under the administrative exemption) (App. 231-232).

[130] *See id.*

[131] According to the U.S. Supreme Court:

> We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

officers received internal leads and contacted potential customers, collected required financial information from customers, entered the collected financial information, identified the programs that are offered based on their information, and matched the customers' needs with the products available.[133] The DOL concluded that the loan officers were not subject to the "administrative exemption" because:

- The loan officers' sales to individual customers constitute "production" work, as distinguished from "promoting the employer's financial product generally;"
- Work performed identical to sales should also be considered sales work;
- The fact that employees were compensated primarily by commissions further indicates that their primary duty is sales; and
- Employers' training of the loan officers in sales techniques and evaluation of their performance based on sales volume establish sales to be their primary duty.[134]

Debt consultants also lack the discretion and independent judgment on matters of significance necessary to qualify for the administrative exemption. The decisions that debt consultants are authorized to make are strictly governed by the Defendants' pre-existing and established operating procedures, guidelines, and scripts.[135] The debt consultants sought to convince customers to enroll in the program if they met the standards outlined by the Defendants.[136] The debt consultants lacked discretion and independent judgment on matters of significance that would be required for the administrative exemption to apply.[137]

The administrative exemption also requires that employees be paid on a "salary basis."[138] The "salary basis" test is met only if an employee regularly receives, each pay period, a predetermined amount constituting all or part of his compensation, which is not subject to reduction

---

[132]  *See* Wage and Hour Division of the U.S. Department of Labor ("DOL"), Administrator's Interpretation No. 2010-1 (March 24, 2010) (App. 125-133).

[133]  *Id.*

[134]  *Id.*

[135]  *See, e.g.,* LWG & DMP Script (App. 143-150).

[136]  *See id.*

[137]  *See Casas,* 2002 WL 507059, at *9-10.

[138]  *See* 29 C.F.R. § 541.200(a)(1).

because of variations in the quality or quantity of work.[139] Debt consultants were not paid on a salary basis because their compensation was driven by sales volume, not a "pre-determined amount." (The base "draw" that was paid at the beginning of employment until commissions were earned was merely an advance, as the "draw" was deducted from future compensation).[140] The "administrative exemption" does not apply to the debt consultants as a matter of law.[141]

### ii. *The administrative exemption does not apply to account specialists.*

Account specialists were also involved in the day-to-day functions of the Defendants' business, as they provided the actual product to the Defendants' customers: the debt settlement and negotiation services.[142] The account specialists communicated with the customers and the creditors in the course of negotiating and settling the debts that were enrolled in the program. These individuals were not primarily charged with the administrative functions of running the operations of the business.

The customer-service account specialists' duties resemble those of case managers working with disabled individuals, whom the DOL determined do not qualify under the "administrative exemption" in a 2006 opinion letter.[143] The DOL explained their work duties:

> The Case Managers' primary duty is servicing up to 30 clients with developmental disabilities by assessing their skills, coordinating the development of individual service plans, teaching them the skills needed to live independently, advocating for their needs and preferences, identifying community resources for the needed services, and coordinating the delivery of those services.[144]

---

[139] *See* 29 C.F.R. § 541.602(a).

[140] *See* DeVoto Depo. 54:13-59:10 (testifying that the "draw is essentially an advance of what hopefully will come in") (App. 287).

[141] *See Bratt*, 912 F.2d at 1069-70; *Casas*, 2002 WL 507059, at *6-10; *Chicago Title*, 853 F.Supp. at 1330; *Cooper Electric*, 940 F.2d at 903.

[142] *See id.*

[143] *See* Wage and Hour Division of the U.S. DOL, Administrator's Interpretation No. FLSA2006-20NA (Sept. 8, 2006) (App. 134-137).

[144] *Id.* at 3 (App. 136).

Likewise, the customer-service account specialists serviced the Defendants' clients who had financial problems (substantial unsecured debt) by assessing their financial condition, coordinating the development of their individual service plans, teaching them the skills needed to benefit from the program, advocating for their needs with creditors, identifying legal resources for needed services, and coordinating the delivery of the Defendants' services. Any discretion these account specialists had was curtailed not only by scripts, procedures, and other guidelines that they were required to follow, but they were also limited by management supervision.[145]

The legal-assistant account specialists lacked the discretion and independent judgment required to qualify for the administrative exemption. Indeed, Mr. Ward admitted during his deposition that he and Lloyd Ward, P.C. are not claiming any exemptions relative to the legal assistants.[146] Moreover, the DOL has specifically found that legal assistants are not exempt from overtime compensation, due to their reliance on lawyers for direction and guidance.[147] Indeed, if the legal-assistant account specialists were allowed the discretion and independent judgment necessary to qualify for the administrative exemption, then the Defendants would be engaging in the unauthorized practice of law, as the DOL warned and the ethical rules preclude.[148]

The account specialists were not paid on a salary basis until the Defendants changed their compensation policies in 2011. The account specialists were originally paid on an hourly basis.[149] The "salary basis" test is met only if an employee regularly receives, each pay period, a pre-determined amount, which is not subject to reduction because of variations in the quality or

---

[145] *See, e.g.,* Welcome Call Checklist (App. 151) (listing certain questions that the account specialists were required to ask new customers).

[146] *See* Ward Depo. at 49:23-50:12 (App. 263).

[147] *See* Wage and Hour Division of the U.S. DOL, Administrator's Interpretation No. FLSA2005-54 (Dec. 16, 2005) at 5 (App. 142).

[148] *See id.*; *see also* TEX. DISCP. R. PROF'L CONDUCT 5.05 (attorneys shall not engage in or assist in the unauthorized practice of law); ABA MODEL RULE 5.5 (same).

[149] *See* Casey Depo. at 125:16-126:1 (App. 295-296).

quantity of the work performed.[150] Accordingly, the account specialists were never paid on a true "salary basis," as their salaries were subject to reduction based on the quantity and quality of their work.[151] The accounts specialists do not qualify for the administrative exemption as a matter of law.[152]

**B.** *The "outside sales" exemption does not apply.*

The Defendants may rely on the "outside sales" exemption.[153] If so, the Defendants must establish that the Plaintiffs:  (1) have a primary duty of making sales or obtaining orders or contracts for services for which consideration will be paid by the client; and (2) are customarily and regularly engaged away from the Defendants' place of business in performing their primary duties.[154] Employees working from home on the telephone are considered to be working at the employer's place of business under this exemption, and the Defendants cannot establish this exemption as a matter of law.[155]

The account specialists have never had the primary duty to make sales or obtain contracts for services, have always worked primarily at the Defendants' offices, and the "outside sales" exemption does not apply to the account specialists.[156]

---

[150]  *See* 29 C.F.R. § 541.602(a).

[151]  *See, e.g.,* Jan. 27, 2011 Bixler E-Mail (penalizing certain accounts specialists by changing their compensation from salary back to hourly and explaining that their salaries would be reduced if they did not work at least 40 hours per week) (App. 124).

[152]  *See Bratt,* 912 F.2d at 1069-70; *Casas,* 2002 WL 507059, at *6-10; *Chicago Title,* 853 F.Supp. at 1330; *Cooper Electric,* 940 F.2d at 903.

[153]  *See* 29 U.S.C. § 213(a)(1).

[154]  *See* 29 C.F.R. § 541.500.

[155]  *See Schultz v. All-Fund, Inc.,* Civ. No. JFM-06-CV-2016, 2007 WL 2333049 (D. Mar. Aug. 13, 2007), at *2 (holding that the "outside sales" exemption did not apply to mortgage loan salesmen because no reasonable jury could find that the plaintiffs customarily and regularly met with clients and conducted business outside of the office); 29 C.F.R. § 541.500.

[156]  *Id.*; 29 C.F.R. § 541.500; *see also* Parker Depo. at 46:1-25 (testifying that the account specialists did not engage in sales and always worked at the Defendants' office) (App. 312).

Although the debt consultants are principally a sales force, they have never regularly been engaged away from the Defendants' place of business, as they have worked on the telephone either at home or at the Defendants' offices.[157] When the Defendants' initially began operations, the debt consultants worked mostly from home (except to attend weekly meetings at the Defendants' offices), but they began working regularly at the Defendants' offices in the Fall of 2009 (while still working at home).[158] Regardless of where the telephone was, the debt consultants are not outside sales employees:

> The outside sales employee is an employee who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home. *Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls. Thus, any fixed site, whether home or office, used by a salesperson as a headquarters or for telephonic solicitation of sales is considered one of the employer's places of business*, even though the employer is not in any formal sense the owner or tenant of the property.[159]

Accordingly, the "outside sales" exemption does not apply, and summary judgment is appropriate on this affirmative defense.

## C. *The other Section 213 exemptions do not apply.*

The Defendants cannot prove that any other exemption listed in 29 U.S.C. § 213 applies. The Plaintiffs are not executives or "learned professionals," and their employment does not relate to an amusement or recreational establishment, farming, agriculture, an exemption by regulation, order, or certificate of the Secretary of Labor under 29 U.S.C. § 214, publication of newspapers,

---

[157] *See All-Fund, Inc.*, 2007 WL 2333049, at *2; C.F.R. § 541.500.

[158] *See, e.g.,* Parker Depo. at 30:16-24 (testifying that he worked at home when he first became employed by the Defendants using telephone equipment provided to him by ABC), 42:3-24 (discussing the one-hour sales meetings every Friday), 48:4-19 (explaining that sales were conducted over the telephone), 67:1-18 (debt consultants began working at the Defendants' offices during Fall 2009), 101:16-103:11 (testifying that the Defendants provided him with software and web-based access to work at home that he used after moving to work at their offices during business hours) (App. 310-313, 315).

[159] *All-Fund, Inc.*, 2007 WL 2333049, at *2 (quoting C.F.R. § 541.500) (emphasis added); *see also Casas*, 2002 WL 507059, at *10-11 (holding that outside sales exemption did not apply to loan originators making sales over the telephone who spent most of their time at the offices of their employer).

operation of a switchboard, sea-vessel work, babysitting or companionship, criminal investigation, computer systems analysis, or software programming.[160] The "maximum hour requirements" exemptions are not applicable, and this case does not involve child labor.[161] Accordingly, the evidence establishes that the Plaintiffs are not exempt under 29 U.S.C. § 213, and the Plaintiffs request that the Court grant summary judgment to dispose of this affirmative defense.

The Defendants have not pleaded any other exemption, and an exemption is an affirmative defense that is waived if not pleaded.[162] The Plaintiffs therefore request that the Court enter summary judgment that the Plaintiffs are non-exempt employees under the FLSA as a matter of law.

## 4. The Defendants cannot establish any other affirmative defense or claim for affirmative relief as a matter of law.

The Defendants bear the burden of proof on their affirmative defenses.[163] Where the non-movant bears the burden of proof on the issues for which summary judgment is sought, the movant need only point out that there is an absence of evidence to support the non-movant's position.[164] The Defendants cannot prove any of their affirmative defenses, and the Plaintiffs request that the Court enter summary judgment to dispose of them.[165]

---

[160] *See* 29 U.S.C. § 213(a).

[161] *See id.* § 213(b)-(c).

[162] *See Donovan v. Hamm's Drive Inn*, 661 F.2d 316, 318 (5th Cir. 1981) (employer waived "retail or service establishment" exemption by failing to plead it as an affirmative defense); *Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100, 104 (9th Cir. 1975) (same).

[163] *See Riel v. Elec. Data Sys. Corp.*, 99 F.3d 678, 682 (5th Cir. 1996).

[164] *See Celotex*, 477 U.S. at 325.

[165] *See id.*; FED. R. CIV. P. 56(c)(2).

A. **The Defendants' affirmative defense that the Plaintiffs were purportedly compensated for all overtime hours worked fails as a matter of law.**

The Defendants pleaded the affirmative defense that the "Plaintiffs were compensated for all hours worked in excess of 40 hours in any particular workweek (as Plaintiffs themselves reported their time worked) at a rate not less than set forth by the overtime provisions of the FLSA."[166] This affirmative defense improperly seeks to shift the burden of proof regarding keeping proper time records.[167] The undisputed evidence establishes that the Defendants did not pay the Plaintiffs for all overtime hours (even the hours reflected by the Defendants' deficient timesheets).[168] Accordingly, the Defendants cannot prove this affirmative defense as a matter of law, and summary judgment is appropriate.[169]

B. **ABC is not entitled to any offsets.**

The Defendants pleaded the affirmative defense that ABC alone is somehow entitled to an offset against any amounts due in an amount equal to what ABC allegedly paid or overpaid the Plaintiffs.[170] The other Defendants did not plead, and thus waived, this affirmative defense.[171] The Defendants fail to explain or identify any facts to establish the nature of the payments for which ABC claims entitlement to an offset.[172] Indeed, ABC would only be entitled to an offset against "pre-payments" of overtime wages to the Plaintiffs for overtime not actually

---

[166] (Doc. 80 at 8, ¶ 49.)

[167] *See* 29 U.S.C. § 211(c) ("Every employer subject to any provision of this chapter or of any order issued under this chapter shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him…."); *see also* 29 C.F.R. § 516.2(7) (stating that every employer subject to the FLSA overtime requirements must keep records of the total hours worked each workday and each workweek).

[168] *See* Regner Depo. at 90:9-91:3, 200:4-201:12 (App. 276, 281-282); Casey Depo. at 135:10-18 (App. 297); *compare* Frank Depo. at 78:2-9 (App. 323); Keel Depo. at 162:12-22 (App. 306); Casey Depo. at 135:10-18 (App. 297); Cozart Depo. at 81:2-14, 123:3-17; *and* Timesheets for Frank, Keel, Casey, and Cozart (App. 329, 332) *with* Compensation Reports for Keel, Casey, and Cozart (App. 359-484).

[169] *See Celotex,* 477 U.S. at 325.

[170] (*See* Doc. 80 at 9, ¶ 51.)

[171] *See Hamm's Drive Inn,* 661 F.2d at 318; *Valley Towing,* 515 F.2d at 104.

[172] (*See* Doc. 80 at 9, ¶ 51.)

worked, but ABC did not make any "pre-payments" for overtime hours, and the Defendants have no evidence to prove ABC's claim for offsets.[173] Because the Defendants do not allege any cognizable grounds for an offset and are not entitled to any credits for payments that are unrelated to wages, this affirmative defense fails as a matter of law, and the Plaintiffs respectfully request that the Court grant summary judgment to dismiss this affirmative defense.[174]

### C.   The Defendants' claim that Plaintiffs worked "irregular" hours and that time was "administratively difficult to record" is no defense.

The Defendants assert that "[t]he alleged time for which Plaintiffs seek compensation is irregular as well as practically and administratively difficult to record."[175] This defense appears to be an admission that the Defendants did not accurately record the Plaintiffs' time and pay records, which would violate the FLSA.[176] Employers may not benefit from their failure to maintain records under the FLSA, and therefore summary judgment is proper on this affirmative defense.[177]

### D.   The Defendants' affirmative defense alleging that the Plaintiffs are not similarly situated fails as a matter of law.

The Defendants pleaded the affirmative defense that the Plaintiffs and the putative class are not similarly situated and that their potential claims reflect variability.[178] This "affirmative

---

[173]   *See Mumphrey v. Credit Solutions of Am., Inc.*, No. 3:09-CV-1208-M, 2010 WL 2216526 (N.D. Tex. June 1, 2010) (Lynn, J.) (dismissing employer's counterclaim for setoffs because the employer failed to assert that the setoffs constituted prepaid overtime pay); *see also Singer v. Cty. of Waco, Tex.*, 324 F.3d 813, 828 (5th Cir. 2003) (affirming district court's judgment that employer was entitled to offsets in the limited circumstance when the employer had been paying the employee extra overtime compensation due to miscalculations).

[174]   *See Credit Solutions*, 2010 WL 2216526.

[175]   (*See* Doc. 80 at 9, ¶ 52.)

[176]   *See* 29 U.S.C. § 211(c); *see also* 29 C.F.R. § 516.2(7).

[177]   *See Stewart*, 121 F.3d at 406 (holding that employer "cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had [he] kept records in accordance with the [FLSA]") (quoting *Mt. Clemens Pottery*, 328 U.S. at 688).

[178]   (*See* Doc. 80 at 9, ¶ 53.)

---

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT        Page 33**

defense" appears to be an end-around the filing of a motion to de-certify should the Defendants contend that the Plaintiffs and the putative class are not similarly situated.[179] Nevertheless, this is not an issue of liability, but rather who may participate in the instant case.  As may be discussed in the context of a future motion to de-certify, the Plaintiffs are similarly situated based on the prevailing factors: (1) the extent to which Plaintiffs' employment settings are similar; (2) the extent to which defenses available to the defendant appear to be individual to each plaintiff; and (3) fairness and procedural considerations.[180] The Plaintiffs' employment settings are similar, the Defendants have not pleaded that defenses would be individual to the each Plaintiff, and no fairness or procedural considerations are cause for concern.

> **E.**     ***The Defendants cannot establish good faith or that the Plaintiffs are not entitled to liquidated damages.***

The Defendants pleaded that only ABC (without including the other Defendants) acted in good faith in attempting to comply with the FLSA and that this somehow defeats a claim for liquidated damages by the Plaintiffs.[181] The Defendants face a "substantial burden" of demonstrating good faith and a reasonable belief that ABC did not violate the FLSA.[182] However, the evidence establishes that ABC willfully violated the FLSA, and the Defendants are unable to meet their burden. ABC states in its own employee handbook, "Federal and state laws require ABC DEBT RELIEF to keep an accurate record of time worked in order to calculate their employee's pay and benefits.[183] Yet, ABC failed to keep accurate time records, as Lloyd

---

[179] *See, e.g., Johnson v. Big Lots Stores, Inc.*, Nos. 04-3201, 05-6627, 2007 WL 5200224, at *3 (E.D. La. Aug. 21, 2007) (denying defendants' motion to de-certify an FLSA collective action).

[180] *See id.*

[181] (*See* Doc. 80 at 9, ¶ 54.)

[182] *Singer*, 324 F.3d at 823 (holding that a district court can decline to award liquidated damages or reduce the amount if the court determines that the employer acted in good faith and had reasonable grounds to believe that it complied with the FLSA).

[183] ABC Employee Handbook at 16 (App. 109).

Regner (ABC's CEO) admits he knew, and the failure to keep accurate time records violates the FLSA.[184] That is not good-faith compliance. Moreover, the Employee Lease and Services Agreement between ABC and Lloyd Ward & Associates states, "Each employee shall be identified according to workers' compensation classification by proper code and according to pay status under the Fair Labor Standards Act or any other rule or regulation that may apply."[185] This reflects ABC's knowledge of the requirements of the FLSA, but, as demonstrated by the evidence, ABC knowingly failed to comply with the wage-and-hour provisions of the FLSA by failing to compensate the Plaintiffs for all overtime hours worked (even though their own records prove that overtime was worked), and the Defendants transitioned certain account specialists from hourly to salary compensation apparently to side-step the FLSA's overtime provisions.[186] The Defendants cannot meet their "substantial burden" to prove that ABC acted in good faith to preclude liquidated damages, as ABC did not act in good faith.[187] (Nor does this defense apply to the other Defendants, as they failed to plead and thus waived this defense.[188]) Accordingly, the Plaintiffs request that the Court grant summary judgment and dismiss this affirmative defense for lack of any evidentiary support.

---

[184]   *See* Regner Depo. at 90:9-91:3 (App. 276); *see also* 29 U.S.C. § 211(c); 29 C.F.R. § 516.2(7).

[185]   Employee Lease and Services Agreement at 2, ¶ 2B (App. 41).

[186]   *Compare* Keel Depo. at 162:12-22 (App. 306); Casey Depo. at 135:10-18 (App. 297); Cozart Depo. at 81:2-14, 123:3-17 (App. 329, 332); *and* Timesheets for Keel, Casey, and Cozart (App. 485-522) *with* Compensation Reports for Keel, Casey, and Cozart (showing that Plaintiffs were not provided overtime compensation for all hours worked in excess of 40) (App. 337-358); *see also* Casey Depo. at 125:16-126:1 (testifying that the change from hourly to salary compensation coincided with her paychecks originating from The Lloyd Ward Group instead of ABC) (App. 295-296).

[187]   *Id.*

[188]   *See Hamm's Drive Inn*, 661 F.2d at 317-18 (holding that affirmative defense, such as an exemption to the FLSA, is waived if not pleaded); *Valley Towing,* 515 F.2d at 104 (same).

**F.** ***The Defendants cannot recover on any claims for affirmative relief or for costs and attorney's fees.***

The Defendants request a "[j]udgment against the Plaintiffs on all claims for relief" and "[f]or an award of Defendants' reasonable costs, attorneys' fees, and disbursements incurred herein."[189] However, the Defendants have not asserted any claims for relief against the Plaintiffs, and they are therefore not entitled to a judgment on any claims for relief against the Plaintiffs as a matter of law.[190] Likewise, the Defendants fail to assert any grounds for an award of costs, attorneys' fees, or disbursements, and the FLSA does not allow for employers, such as the Defendants, to recover these sums from the Plaintiffs.[191] Accordingly, the Plaintiffs respectfully request that the Court enter summary judgment that the Defendants are not entitled to any affirmative recovery or judgment against the Plaintiffs or to recover any costs or attorney's fees (or expenses) from the Plaintiffs.

**Conclusion & Prayer for Relief**

The Defendants have unlawfully withheld wages from Plaintiffs for overtime worked according to the evidence and established legal precedent. They have therefore received the fruits of the Plaintiffs' labor without providing commensurate compensation. The only fact issues in this case—whether any of the opt-in Plaintiffs that join this matter may not be similarly situated and what amount of damages that the Plaintiffs are entitled to recover—are not relevant to the issue of liability upon which the Plaintiffs move for summary judgment. Indeed, the Defendants may dispute that the Plaintiffs are similarly situated by filing a motion to de-certify the class, and the Defendants may present evidence and argument at trial to advocate for a damages model that

---

[189] (*See* Doc. 80 at 10.)

[190] (*See* Doc. 80.)

[191] *See, e.g., San Antonio Metro. Transit Auth. v. McLaughlin*, 684 F.Supp. 158, 162 (W.D. Tex. 1988) (holding that a defendant-intervenor was not a plaintiff, had no recovery from his employer, and was not entitled to recover costs and attorney's fees under the FLSA).

they deem to be justified. But the Defendants cannot dispute that they are liable to the Plaintiffs and all others similarly situated as a matter of law on their claims under the FLSA.

The Plaintiffs have demonstrated that the Defendants violated Section 207(a) of the FLSA, as the Defendants are employers and joint employers of the Plaintiffs, the Plaintiffs are covered by the FLSA and worked uncompensated overtime hours for the Defendants, and the Plaintiffs are non-exempt employees under the FLSA. The Defendants are thus liable to the Plaintiffs for compensatory damages in an amount equal to their unpaid compensation. The Defendants also cannot meet their burden to prove any of their affirmative defenses or requests for affirmative relief, including their substantial burden to prove ABC's good faith to negate the Plaintiffs' statutory entitlement to liquidated damages (which the other Defendants have not pleaded and waived). The Defendants are thus liable to the Plaintiffs for liquidated damages in an additional amount that is equal to the Plaintiffs' compensatory damages. Further, the FLSA expressly provides for the Plaintiffs to recover their reasonable and necessary attorney's fees and costs when prevailing on their claims, as the evidence establishes that the Plaintiffs have done.

The Plaintiffs have waited long enough to be paid wages that they are owed, and a trial limited to the issue of damages furthers the just, speedy, and inexpensive determination of this proceeding that is espoused by the Federal Rules of Civil Procedure and the purpose that the FLSA allows for employees to bring their claims as collective actions. Accordingly, liability should be determined by the Court on summary judgment, and the Plaintiffs respectfully request that the Court grant summary judgment in favor of the Plaintiffs holding the Defendants liable under the FLSA for the Plaintiffs' compensatory damages, liquidated damages, and reasonable and necessary attorney's fees and costs of court.

Dated:  December 2, 2011                    Respectfully submitted,


                                           By:  */s/ Charles W. Branham, III*
                                           _____
                                                **Charles W. Branham, III**
                                                Texas Bar No. 24012323
                                                tbranham@goldfarbbranham.com
                                                **Jeffrey Goldfarb**
                                                Texas Bar No. 00793820
                                                jgoldfarb@goldfarbbranham.com
                                                **Todd B. Goldberg**
                                                Texas Bar No. 24072121
                                                tgoldberg@goldfarbbranham.com


                                                **GOLDFARB BRANHAM LLP**
                                                Saint Ann Court
                                                2501 N. Harwood Street, Suite 1801
                                                Dallas, Texas 75201
                                                214.583.2233 (Telephone)
                                                214.583.2234 (Facsimile)


                                                ***Attorneys for Plaintiffs***


## <u>CERTIFICATE OF SERVICE</u>

On December 2, 2011, I electronically submitted the foregoing document with the clerk of the court of the U.S. District Court, Northern District of Texas, using the CM/ECF system which will send a notice of electronic filing to all counsel of record. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).


                                           _____
                                                */s/ Charles W. Branham, III*
                                                Charles W. Branham, III